UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY LEON ROBINSON,<br>Plaintiff,<br>v.<br>KEITH DEVOS, et al.,<br>Defendants. | CASE NO. 3:25-CV-6130-RAJ-DWC<br>REPORT AND RECOMMENDATION<br>Noting Date: **August 13, 2026** |

This civil rights action has been referred to United States Magistrate Judge David W. Christel. Before the Court is a Motion to Dismiss filed by Defendants Kevin Devos, Shawn Candella, Tabitha Yockey, and Robert Hunt. Dkt. 19. Upon review, the Court finds that Plaintiff Jeffrey Leon Robinson has not stated a cognizable § 1983 claim against any defendant and recommends the Motion to Dismiss (Dkt. 19) be granted. It is further recommended Plaintiff, who proceeds *pro se* in this action, be given leave to amend his complaint.

## I. BACKGROUND

Plaintiff, a civilly committed individual at the Special Commitment Center ("SCC"), brings this 42 U.S.C. § 1983 action concerning the conditions of confinement at that facility.

Dkt. 7. As defendants, Plaintiff names SCC CEO Keith Devos, Deputy CEO Shawn Candella, Chief Investigator Robert Hunt, and Chief of Community Programs Tabithia Yockey. *Id.* at 1, 3

Plaintiff organizes his complaint into three counts, and each count is alleged against "all defendants." *Id.* at 4–9. In Counts One and Two, Plaintiff alleges procedural due process violation in connection with a temporary transfer to SCC's high management unit and an accompanying suspension from institutional work assignments. *Id.* at 4–8. In Count Three, Plaintiff alleges the conditions of his confinement while housed in the high management unit constituted cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 8–9. As relief, Plaintiff seeks $1.5 million in compensatory and punitive damages. *Id.* at 10.

On January 8, 2026, the Court directed service of the complaint upon all defendants. Dkt. 8. Each defendant returned timely service waivers and, on March 6, 2026, Defendants moved to dismiss the complaint in its entirety. Dkt. 19; Dkts. 13–17 (service waivers). After obtaining two extensions of time, Dkts. 22, 25, Plaintiff filed a timely response arguing Defendants' Motion should be denied, Dkt. 26. On June 25, 2026, Defendants filed a timely reply. Dkt. 27.

Accordingly, the Motion to Dismiss (Dkt. 19) is fully briefed and ready for consideration by the Court.

## II. STANDARD OF REVIEW

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*.; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

## III. DISCUSSION

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 19. In particular, Defendants argue Plaintiff fails to state a claim under the Eighth and Fourteenth Amendments, that they are entitled to qualified immunity, and that Plaintiff fails to allege sufficient personal participation to sustain his § 1983 claims. Dkt. 19 at 4–11. In response, Plaintiff generally argues his complaint adequately states constitutional claims when liberally construed and, as such, he should be permitted to proceed with his complaint. Dkt. 26 at 1–3.

**A. Legal Standards Applicable to Civil Detainees**

A civilly committed individual is entitled to more considerate treatment and conditions than those for whom conditions of confinement are designed to punish. *Youngberg v. Romeo*, 457 U.S. 307, 319–22 (1982). Unlike convicted prisoners, a civilly detained person cannot be subject to treatment or conditions amounting to punishment, but they may be subject to unfavorable treatment if it furthers a nonpunitive interest like the "effective management of a detention facility." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Nevertheless, court decisions which define the constitutional rights of prisoners can be relied upon to establish a floor for the constitutional rights of civil detainees. *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012); *Hydrick v. Hunter*, 500 F.3d 978, 989 n. 7 (9th Cir. 2007). Thus, in determining whether Plaintiff sufficiently pled a constitutional violation, the Court looks to decisions defining the rights of prisoners.

**B. Standards Governing § 1983 Claims Against Individual Defendants**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To satisfy the second step, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is

legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633–34. Further, a § 1983 suit cannot be based on vicarious liability alone, but must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385–90 (1989).

Section 1983 liability cannot rest on a theory of *respondeat superior*—that is, the mere fact a defendant holds a supervisory position is not enough. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). Instead, a plaintiff must show that a supervisory defendant personally participated in the alleged deprivation or set in motion a series of acts by others that the defendant knew, or reasonably should have known, would cause constitutional harm. *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011); *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

**C. Counts One and Two—Procedural Due Process Violations**

1. Factual Allegations

In Counts One and Two, Plaintiff contends he was not provided sufficient written notice and process in connection with a housing transfer and work suspension in violation of his procedural due process rights. *Id.* at 4–7.

With regard to the housing transfer, Plaintiff alleges that on January 12, 2023, Defendant Hunt instructed SCC staff to secure his room after documents located in his room led Defendant Hunt to believe Plaintiff was committing wire fraud. *Id.* at 4–6. Plaintiff alleges Defendant Hunt informed Defendant Candella of those suspicions and, as a result, Defendant Candella subsequently directed Plaintiff's transfer from a low management unit to a high management unit pending an investigation into the suspected wire fraud. *Id*. Plaintiff alleges he was informed he was being denied access to his room because it needed to be searched as part of the investigation,

however, he further alleges he did not receive a behavior management report ("BMR"), a hearing, or written notice explaining the transfer. *Id.* at 6. Plaintiff alleges the documents that instigated the investigation actually related to a 2012 federal prosecution for which he had already served his sentence, and that he informed Defendants Hunt and Yockey of these circumstances yet allegedly remained in the high maintenance unit from January 2023 until April 2023. *Id.*

As for the work suspension, Plaintiff alleges that on January 13, 2023, his work supervisor informed him that Defendant Yockey directed Petitioner's suspension "from all work details until further notice." *Id.* at 5. Plaintiff alleges he did not receive written notice explaining the suspension or the reasons for it. *Id.* at 6.

2. Analysis

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v Conner*, 515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

Defendants argue that Plaintiff's alleged transfer to the high management unit did not implicate a protected liberty interest and that his work suspension likewise does not implicate a constitutionally protected interest. Dkt. 19 at 5, 7. The Court agrees that, to the extent Counts One and Two are based on Plaintiff's alleged work suspension, he does not have a constitutionally protected interest in retaining employment while detained. *See Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment

'does not create a property or liberty interest in prison employment[.]'") (citing *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir. 1986)).

Even assuming Plaintiff's claims regarding transfer implicated a protected interest, the complaint does not allege sufficient facts demonstrating Plaintiff did not receive sufficient process in connection with such a deprivation.

An informal, non-adversarial evidentiary hearing provided within a reasonable period is generally sufficient to satisfy the Due Process Clause when confining an inmate to administrative segregation because he poses a security threat or pending the completion of an investigation into misconduct charges. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. The "due process clause does not require detailed written notice of the charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1100–01. Instead,

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

*Hewitt*, 459 U.S. at 476; *see also Herrick v. Quigley*, 756 F. App'x 726, 728–29 (9th Cir. 2019).

Here, Plaintiff alleges that he received no BMR, no hearing, and no written explanation for his transfer. He does not allege, however, whether he was denied any informal opportunity to learn the reasons for his placement, present his version of events, or obtain review of the placement within a reasonable time. Furthermore, Plaintiff alleges he received verbal notification of the reason for his transfer and that he shared his version of events with Defendants Hunt and

Yockey, which suggest that Plaintiff received notice and at least some informal opportunity to be heard in connection with the transfer. *Id.* at 4–6. Accordingly, the complaint does not include sufficient factual matter to permit the Court to reasonably infer that Plaintiff was denied constitutionally adequate process under the circumstances.

In addition, Plaintiff does not allege sufficient facts demonstrating personal participation in an alleged due process violation by all defendants. Plaintiff alleges no action, directive, failure to act, or other facts demonstrating personal participation by Defendant Devos. *See* Dkt. 7. Indeed, Plaintiff asserts no allegations against Defendant Devos beyond identifying him as SCC's CEO. *Id.* at 3. Next, Plaintiff alleges Defendant Candella directed that he be transferred to the high maintenance unit after being informed that Plaintiff was suspected of committing wire fraud. *Id.* at 4–6. As stated, however, Plaintiff does not clearly allege what procedural protections, if any, accompanied his transfer, and thus he also fails to allege whether Defendant Candella personally failed to ensure sufficient procedural protections were provided in connection with his transfer directive.

As for the remaining two defendants, Plaintiff does not allege what role Defendant Hunt played in the transfer, or the process afforded in connection with that transfer beyond reporting the initial suspected wrongdoing. *Id.* Similarly, Plaintiff alleges Defendant Yockey directed Plaintiff's work suspension, but he does not allege that Defendant Yockey participated in the housing transfer or that she determined what procedural protections, if any, would accompany that transfer. *Id.*

Accordingly, Plaintiff has failed to plausibly allege a due process violation caused by any defendant and, as such, Counts One and Two should be dismissed for failure to state a claim.

**D. Count Three—Eighth Amendment Violation**

In Count Three, Plaintiff alleges that while housed in the high management unit he possessed only one change of clothing, lacked access to personal hygiene items for several days, and was denied access to his clothing and personal property for several months. Dkt. 7 at 8–9. Plaintiff further alleges he was unable to participate in work assignments and experienced difficulty in obtaining replacement religious materials. *Id.* Plaintiff contends these conditions constituted cruel and unusual punishment in violation of the Eight Amendment. *Id.*

As Defendants argue, however, Plaintiff is a civil detainee whose conditions of confinement are governed by the Fourteenth Amendment, rather than a convicted prisoner whose claims arise under the Eighth Amendment. *See Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1120–21 (9th Cir. 2003). Accordingly, the Eighth Amendment does not govern the conditions of Plaintiff's confinement. To the extent Plaintiff intends to assert a separate conditions-of-confinement claim under the Fourteenth Amendment, the complaint does not plead such a claim. *See* Dkt. 7. Plaintiff has failed to identify the appropriate constitutional basis for a conditions-of-confinement claim and has not demonstrated whether the alleged constitutional injury in Count Three is distinct from Plaintiff's due process claims raised in Counts One and Two.

Accordingly, the Court recommends Count Three be dismissed for failure to state a cognizable claim.[1]

**E. Dismissal with Leave to Amend**

Having concluded that the complaint should be dismissed for failure to state a claim, the Court next considers whether Plaintiff should be granted leave to cure the deficiencies through amendment. The Ninth Circuit has "established that a *pro se* litigant bringing a civil rights suit

---

[1] As the Court finds Plaintiff has failed to state a claim for other reasons, it is unnecessary to address Defendants' alternative argument for dismissal on qualified immunity grounds. Dkt. 19 at 7–9.

must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment." *See Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987). Plaintiff has not previously received notice of the pleading deficiencies identified herein. Therefore, although the complaint fails to state a claim against any defendant, the Court cannot conclude amendment would necessarily be futile, nor is it clear that Plaintiff would be unable to overcome the identified deficiencies if granted leave to amend.

Accordingly, the undersigned recommends Plaintiff be granted leave to file an amended complaint.

## IV. CONCLUSION

Upon review, the Court finds that Plaintiff has not stated a cognizable § 1983 claim against any defendant and recommends the Motion to Dismiss (Dkt. 19) be granted. It is further recommended Plaintiff be given leave to amend his complaint.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 13, 2026**.

Dated this 30th day of July, 2026.

David W. Christel
United States Magistrate Judge